UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRIAN MARKEITH GAGE,

    Plaintiff,

v.                            Case No. 3:19-cv-3650-MCR-HTC

WALTER CLEMMONS, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Warden Walter Clemmons' motion to dismiss (ECF Doc. 30).[1]  The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  Upon consideration of the motion and relevant law, and for the reasons set forth below, the undersigned recommends the motion be granted.

## I.  BACKGROUND

Plaintiff, Brian Markeith Gage, proceeding *pro se* and *in forma pauperis*, filed this action under 42 U.S.C. § 1983 against Warden Clemmons and others, arising out of events that occurred at Santa Rosa Correctional Institution ("SCRI") on September 14, 2018.  ECF Doc. 9.  Specifically, Plaintiff alleges he was sexually

---

[1] *See also,* Defendants' Notices of Filing, ECF Doc. 37 and 38, correcting exhibits 3 and 4 to the motion to dismiss.

and physically assaulted on that day by another inmate, Trent Payne, who should not have been placed in a cell with him. Plaintiff alleges that Plaintiff was in administrative confinement, awaiting protective management, because he had been the victim of an earlier sexual assault. Thus, according to Plaintiff, Defendant Sergeant Stephens should not have placed Payne in the cell with him. In addition to knowing Gage's protected status, Stephens also knew that Payne was a "Gangster Disciple" and, for this reason as well, should not have placed Payne in a cell with Plaintiff. ECF Doc. 9 at 5.

Plaintiff further alleges that following the September 14, 2018, assault, other staff members continued to place other inmates (who were not on protected status) with Plaintiff, thus jeopardizing his safety. Thus, as to the Warden, Plaintiff alleges "it has been a casual practice to place/house inmates in harmful and predatory confinements in dorms/cells." ECF Doc. 9 at 7. Presumably in support of this "casual policy," Plaintiff repeats that other staff continued to place other inmates with him after the incident under the Warden's "guise" even after Plaintiff had "submitted formal grievances reporting PREA". *Id.*

## II.    LEGAL STANDARD

As to the merits of Plaintiff's claims, the Warden has moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. *Id.* (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted). In reviewing a *pro se* plaintiff's pleadings, a court must liberally construe the plaintiff's allegations. *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). However, the duty of a court to construe *pro se* pleadings liberally does not require the court to serve as an attorney for the plaintiff. *Freeman v. Sec'y, Dept. of Corr.*, 679 F. App'x 982, 982 (11th Cir. 2017) (citing *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## III.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The Warden has moved to dismiss Plaintiff's action against him on the following grounds: (1) Plaintiff's allegations are ones covered by the Eighth Amendment and not the Fourteenth Amendment, so any Fourteenth Amendment claims should be dismissed; (2) Plaintiff's allegations of a "casual policy" implemented by the Warden which caused Plaintiff's rights to be violated are

conclusory and thus his Eighth Amendment claim should be dismissed; (3) the Warden is entitled to absolute immunity for suits in his official capacity under the Eleventh Amendment; and (4) the Warden is entitled to qualified immunity for claims in his individual capacity.

In addition to the 14-day response deadline set forth in the Local Rules, because Plaintiff is *pro se*, the undersigned entered a separate order on July 2, 2020, specifically giving Plaintiff an opportunity to respond and extending his time to thirty (30) days. ECF Doc. 32. Plaintiff, however, did not file a response or seek additional time to do so.

As discussed further below, the undersigned agrees with the Warden that (1) Plaintiff does not have a Fourteenth Amendment, only an Eighth Amendment claim; (2) Plaintiff's Eighth Amendment claim fails as a matter of law; (3) the Warden is entitled to both Eleventh Amendment immunity and qualified immunity; and (4) Plaintiff has failed to exhaust his claims as to the Warden.

### A.    Fourteenth Amendment Claim

In the "Statement of Claims" portion of Plaintiff's amended complaint, Plaintiff states that he is asserting a Fourteenth Amendment claim against Defendants for "failure to comply with the process of protect[ing] inmate from sexual predators." ECF Doc. 9 at 8. In the undersigned's prior amend order to the Plaintiff, the undersigned advised Plaintiff that Plaintiff had failed to allege a

Fourteenth Amendment claim against Defendants in his initial complaint. ECF Doc. 7. Specifically, "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally [ ] inadequate process", *Nurse v. City of Alpharetta*, 775 F. App'x 603, 607 (11th Cir. 2019), citing *J.R. v. Hansen*, 803 F.3d 1315, 1320 (11th Cir. 2015) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). Plaintiff, however, had not alleged facts sufficient to support any of the three elements of a Fourteenth Amendment claim. Plaintiff did not cure this deficiency in his amended complaint.

Indeed, as previously stated, Plaintiff admits he applied for protective management, which was pending, and, after the assault, was interviewed and subsequently transferred to another facility. Moreover, "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." *King v. Corr. Corp. of Am.*, No. 5:12CV312/MP/CJK, 2013 WL 10937390, at *4 (N.D. Fla. Oct. 7, 2013), *report and recommendation adopted*, No. 5:12-CV-00312-MP-CJK, 2015 WL 5043078 (N.D. Fla. Aug. 26, 2015) (quoting, *Taylor v. Adams,* 221 F.3d 1254, 1259 (11th Cir.2000).

Also, as the undersigned previously pointed out, the Supreme Court has held that the Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners" from cruel and unusual punishment and that the "Due

Process Clause affords . . . no greater protection." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). Thus, the undersigned agrees with the Warden that Plaintiff's sole remedy here for his failure to protect claim is under the Eighth Amendment. Accordingly, the undersigned recommends the Fourteenth Amendment claim be dismissed.

### B.    Plaintiff's Allegations of a "Casual Practice" Are Conclusory

Also, in the Court's prior amend order, the Court advised Plaintiff that supervisors, such as the Warden, can be held "liable under... § 1983, for the unconstitutional acts of [their] subordinates [only] if [they] personally participated in the allegedly unconstitutional conduct or if there is a causal connection between [their] actions... and the alleged constitutional deprivation." *Douglas v. Yates,* 535 F.3d 1316, 1322 (11th Cir. 2008) (quotation marks omitted).

There is absolutely no allegation by Plaintiff that the Warden personally participated in the assault or in housing Payne with Plaintiff. There is further no allegation the Warden had personal knowledge that Payne was housed with Plaintiff or that Payne was or could be a danger to Plaintiff. Thus, for Plaintiff to state an Eighth Amendment claim against the Warden for failure to protect, he must establish a causal connection by showing that: (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so"; (2) "the supervisor's improper custom or policy le[d] to

deliberate indifference to constitutional rights"; or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.*

In Plaintiff's amended complaint, he alleges that the Warden has a "casual practice to place/house inmates in harmful and predatory confinements in dorms/cells." ECF Doc. 9 at 7. This bare allegation, however, is purely conclusory and conclusory allegations are insufficient. *See Harvey v. City of Stuart*, 296 F. App'x 824, 826 (11th Cir. 2008) (affirming dismissal of a § 1983 action against a municipality because the plaintiff "failed to identify any policy or custom that caused a constitutional violation, and his vague and conclusory allegations were insufficient to support the complaint"). "A plaintiff must plead more than a blanket assertion that a policy or practice existed; he must specifically identify which policy or practice, if any, caused his injuries." *Kelly v. Ambroski*, 97 F. Supp. 3d 1320, 1341 (N.D. Ala. 2015) (quoting *Wayne v. Jarvis,* 197 F.3d 1098, 1105 (11th Cir.1999)). Plaintiff's "self-serving, conclusory statement amounts to no more than a 'naked assertion,' which fails to satisfy the pleading standard. *Douze v. Stamen*, 2018 WL 4360622, at *4 (M.D. Fla. Sept. 13, 2018) (finding allegation that "on information and belief," the Supervisory Defendants had a policy, practice, procedures, and customs "result[ing] from their failure to provide sufficient funds and adequate

medical staff to meet the medical needs of inmates" to be insufficient to overcome dismissal) (citing *Twombly,* 550 U.S. at 570; *Harvey*, 296 F. App'x at 826).

The Eleventh Circuit has stated that "[t]o establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Id.* The Eleventh Circuit has defined "custom" to mean "a practice that is so settled and permanent that it takes on the force of law." *Wayne,* 197 F.3d at 1105. Plaintiff's amended complaint, however, is devoid of any such facts. He does not, for example, allege that the staff employed this same conduct as to other inmates or prisoners. *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011) (finding isolated incident, even if involved multiple employees, was not sufficient to show a custom or practice and stating, "Craig did not even present evidence that these practices had been employed by Georgia Correctional for any other detainees regardless of whether the detainees had been injured").

Plaintiff's allegation that staff continued to house inmates who were not in protective custody with him during the two weeks between his assault and his transfer does not constitute "a persistent and wide-spread practice."[2] *See Hurst v. Flesher*, No. 2020 WL 1929460, at *13 (M.D. Fla. Apr. 21, 2020) (dismissing complaint where the only fact plaintiff provided supporting his claim of a custom or

---

[2] According to the grievance response, Plaintiff was relocated to another cell after the assault and then transferred on September 26, 2018. ECF Doc. 30-4 at 1.

practice was to factually dissimilar claim of retaliation of another inmate); *Miles v. Office of the Sheriff Mike Williams,* 2019 WL 4805564, at \*2 (M.D. Fla. Oct. 1, 2019) ("Plaintiff has not demonstrated that this single prior incident establishes "a history of widespread abuse").  Moreover, there is no allegation that any of these other inmates harmed Plaintiff.

Accordingly, the undersigned recommends Plaintiff's claims against the Warden be dismissed for failure to state a claim.  *See Siskos v. Sec'y, Dep't of Corr.*, No. 4:17-CV-186-RH-GRJ, 2018 WL 2452204, at \*11 (N.D. Fla. May 18, 2018), *report and recommendation adopted,* No. 4:17CV186-RH/GRJ, 2018 WL 2449205 (N.D. Fla. May 31, 2018) ("To the extent Plaintiff claims that the Secretary maintains a custom or policy of discriminating against inmates with mental health issues, Plaintiff's allegations are conclusory and do not identify the policy or custom Plaintiff says was implemented to discriminate against inmates with mental health issue.  In the complete absence of more, Plaintiff's Eighth Amendment claim against the Secretary should be dismissed."), *aff'd,* No. 19-10799, 2020 WL 2988850 (11th Cir. June 4, 2020).  Additionally, because the Plaintiff has already been given an opportunity to amend this very claim as well as an opportunity to respond to the motion to dismiss, the undersigned finds that an additional amendment would be futile.

## C.    The Warden Is Immune From Liability

The Warden also raises two (2) immunity arguments.  First, he argues that as to the claims against him in his official capacity, he is absolutely immune from liability under the Eleventh Amendment.

Absent an express waiver by the State or a valid congressional override, the Eleventh Amendment bars an action for monetary damages against an official or agency of the State of Florida in federal court.  *See Will*, 491 U.S. at 71 ("The Eleventh Amendment bars [suits against a State] unless the State has waived its immunity . . . ."); *Gamble v. Florida Dept. of Health & Rehab. Services*, 779 F.2d 1509, 1512 (11th Cir. 1986) (holding that the Eleventh Amendment "will bar damage awards against state officers sued in their official capacities in suits brought in federal court pursuant to 42 U.S.C.A. § 1983").  The State of Florida has not waived its sovereign immunity from §1983 suits.  *See Gamble*, 779 F.2d at 1513-15. A suit against a state employee in his official capacity is deemed to be a suit against the state for Eleventh Amendment purposes.  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).  Thus, Plaintiff's claims for monetary relief under § 1983 against the Warden should be dismissed.

Second, the Warden argues that he is entitled to judgment based on qualified immunity for claims asserted against him in his official capacity.  Because the undersigned finds that Plaintiff has failed to show that the Warden engaged in a

constitutional violation, the Warden would necessarily be entitled to qualified immunity. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

## IV.    MOTION    TO    DISMISS    FOR    FAILURE    TO    EXHAUST ADMINISTRATIVE REMEDIES

The Warden has also moved to dismiss for failure to exhaust. Specifically, the Warden argues that the grievances filed by Plaintiff were insufficient to put the FDOC on notice of his claim against the Warden. For the reasons set forth below, the undersigned agrees.

As an initial matter, the defense of failure to exhaust should be treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two (2) steps. *See Turner*, 541 F.3d at 1082. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to

exhaust administrative remedies, it must be dismissed." *Id*. (citing *Bryant*, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id*. (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

## A. Exhaustion Under the Prison Litigation Reform Act ("PLRA")

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."

*Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *See Booth*, 532 U.S. at 734, 741. The requirement is not subject to waiver by a court or futility or inadequacy exceptions. *See id.* at 741 n. 6.

Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006); *see also id.* at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

Additionally, a plaintiff must exhaust his available administrative remedies as to *each claim* set forth in his complaint. *See Martinez v. Minnis*, 257 F. App'x 261, 265 n. 5 (11th Cir 2007) (finding prisoner who filed grievance concerning numerous claims failed to exhaust a retaliation claim because grievance "did not mention retaliation or use any words synonymous with or indicating retaliation, nor did it provide the BOP with notice of allegedly retaliatory action or the opportunity to

correct it"). A court must dismiss an action if it is satisfied that an inmate failed to properly exhaust his available administrative remedies before filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

The grievance procedure that must be followed is determined by the agency – here, the FDOC. *See Jones*, 549 U.S. at 218. The FDOC's grievance procedures generally require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). For certain grievances, including a grievance related to sexual abuse, an inmate may bypass the informal grievance and go directly to the formal grievance process. *See* Fla. Admin. Code r. 33-103.005(1); Fla. Admin. Code r. 33-103.006(3)(j).

## B.    The Grievances

On September 24, 2018, Plaintiff filed a timely formal grievance with the Warden about the September 14, 2018 attack by Payne. ECF Doc. 30-4 at 2, grievance number 1809-119-538. In the grievance, Plaintiff complained that Payne should never have been his roommate because Plaintiff is transgender, "listed as an adverse PREA risk," and pending protective management. *Id.* Plaintiff complained

that "staff" was negligent and at fault and that "[e]ven now my safety is continually being neglected to this date." *Id.*

On October 10, 2018, the Warden returned the grievance without further processing because it had been previously addressed when Plaintiff reported it to Captain Jernigan. ECF Doc. 30-4 at 1.[3]  In the response, the Warden noted that Plaintiff was located to another cell and that he was also transferred on September 26, 2018. *Id.*  The Warden further advised Plaintiff that future inquiries should be submitted to the institutional inspector by submitting a DC6-236 inmate request. *Id.* The Plaintiff did not appeal this grievance to the Secretary, nor did he submit an inmate request.

On October 8, 2018, Plaintiff filed a second formal grievance about the September 14, 2018 incident.[4]  ECF Doc. 30-6 at 4, grievance number 1810-102-058.  Again, Plaintiff references just the September 14, 2018 incident and says that Payne should never have been housed with Plaintiff because Payne was in confinement for disciplinary reasons and Plaintiff is pending transfer for protective

---

[3] The Warden cites Fla. Admin. Code r. 33-103.014(1)(N), but likely meant to cite r. 33-103.014(1)(m) which provides that a grievance may be returned without processing if "[a] decision has already been rendered to an inmate by a particular office on the issue currently being grieved before it."

[4] In the Defendants' motion, they state that the October 8, 2018 grievance was untimely.  However, "[t]here is no time limit for filing a formal grievance regarding sexual abuse."  Fla. Admin. Code r. 33-103.006(3)(j)1.a; *see also* r. 33-103.011(1)(b)4 ("Pursuant to sub-subparagraph 33-103.006(3)(j)1.a., F.A.C., and notwithstanding the above provisions, sexual abuse grievances filed either by the inmate or a third party may be filed at any time after the incident is alleged to have occurred.").

management.  *Id.*  He alleges again that "staff" was negligent.  *Id.*  In this grievance, Plaintiff alleges that he told the housing officer, Officer Bland, who was conducting a master roster count, that Payne should not be housed with him.  *Id.*  Additionally, Plaintiff states that Payne is a STG gang member.  *Id.*

On October 24, 2018, the grievance was returned without processing because the allegations had already been reported to the Inspector General prior to receipt of this grievance.  ECF Doc. 30-5 at 1.  Plaintiff was instructed to contact the inspector's office with questions or concerns.  There is no indication that Plaintiff acted further on this grievance.

On October 23, 2018, Plaintiff filed a second formal grievance to the Warden. ECF Doc. 38-1 at 6, grievance number 1810-102-158.  In this grievance, Plaintiff stated he was requesting an "appeal for a disciplinary report (log #102-18283)."  *Id.* Additionally, Plaintiff explains that he was a PREA victim on two occasions, once on July 11, 2018, and again on September 14, 2018, which is why he was in administrative confinement (pending transfer).  ECF Doc. 38-1 at 7.  Plaintiff also states that "as of the date of this signed appeal the investigation is still open" and complains that his protection was never addressed.  *Id.*  As his remedy, Plaintiff sought for his appeal to be approved and complains that he is being punished for departments not coming together.  *Id.*

On October 29, 2018, this grievance was returned without processing because the institution had no record of Plaintiff having been found guilty of a DR #102-182383.  ECF Doc. 30-6 at 3; 38-1 at 5.

On November 1, 2018, Plaintiff filed a third formal grievance to the Warden regarding the September 14, 2018 incident.  ECF Doc. 30-3 at 2, grievance number 1811-102-013.  In this grievance, Plaintiff mentions Defendant Sgt. Stephens for the first time and states that after Stephens left Payne with Plaintiff, Payne realized Plaintiff was transgender and became sexually inappropriate.  *Id.*  Once again, Plaintiff mentions Officer Bland and having told him that Payne was under the influence of K-2 and handing him a "note stating PREA."  *Id.*  Plaintiff again complains that Payne should not have been with him because Plaintiff is pending protective management and that he will be seeking civil damages.  *Id.*

On November 5, 2018, the grievance was returned without processing because it was a duplicate of grievance number 1810-102-058.  ECF Doc. 30-3 at 1.

On November 6, 2018, Plaintiff filed an appeal to the Secretary.  ECF Doc. 30-6 at 2, appeal number 18-6-48583.  The appeal addresses the September 14, 2018, incident and that Payne should not have been housed with Plaintiff.  *Id.*  The appeal also references grievance numbers 1810-102-058 and 1811-102-013.  *Id.*

On November 19, 2018, the appeal was approved for further inquiry and Plaintiff was advised that the institution will be providing a response.  ECF Doc. 30-

6 at 1.  The response further stated that if Plaintiff feels the institution's response is inadequate, he should file an appeal in fifteen (15) days from the date of the institution's response.  *Id.*  There is no indication that Plaintiff filed a further appeal after receiving a response from the institution.  On December 13, 2018, an amended response was issued, stating that Plaintiff's request for action by the Secretary is denied because the incident was previously referred to the Office of the Inspector General prior to receipt of the appeal.  ECF Doc. 38-1 at 1.

### C.    Sufficiency of the Grievances

The Warden argues that Plaintiff has failed to exhaust his administrative remedies because none of his grievances mention any improper conduct by the Warden or even the existence of a casual policy of improperly housing inmates on disciplinary action with inmates on protective management.   In other words, according to the Warden, the grievances fail to put the FDOC on notice that the Warden failed to protect Plaintiff.

The FDOC regulations do not require a specific level of detail be included in the grievances.  "The only requirement established by FDC's rules is that the 'inmate shall ensure that the form is legible, that included facts are accurately stated, and that only one issue or complaint is addressed.'"  *Harvard v. Inch*, -- F.Supp.3d --, 2019 WL 5587314, at *11 (N.D. Fla. Oct. 24, 2019) (quoting Fla. Admin. Code R. 33-103.005(2)(b)2.).  Thus, "[b]y its terms, this mandates no level of detail at all,

requiring only that whatever facts are stated must be true." *Goldsmith v. White*, 357 F. Supp. 2d 1336, 1339 (N.D. Fla. 2005).

That said, the grievance must contain enough information to put officials "on notice of all of the issues in contention and allow the [authority] an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (citations omitted); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued[.] . . . But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem."); *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (holding that the exhaustion requirement is satisfied if the grievance "served its function of alerting the state and inviting corrective action")  Additionally, an inmate must provide "all relevant information reasonably available to him."  *See Brown v. Sikes*, 212 F.3d 1205, 1207-08 (11th Cir. 2000).

The undersigned agrees with the Warden that the grievances filed by the Plaintiff were insufficient to put officials on notice of any wrongful conduct by the Warden.  As stated herein, the grievances did not reference any "casual practice to

place/house inmates in harmful and predatory confinements in dorms/cells." None of the grievances complained about any other instances where inmates were wrongfully placed with Plaintiff or similar circumstances involving other inmates. Instead, the sole issue in the grievances Plaintiff filed (other than the one regarding the disciplinary report) is the single placement of Payne in Plaintiff's cell on September 14, 2018.

Thus, the grievances were insufficient to put the institution on notice of Plaintiff's claims against the Warden. *See e.g., Goldsmith*, 357 F.Supp 2d at 1340-41 (holding that inmate's failure to mention his sexual orientation, and failure to identify the core facts on which his claim was based meant that his administrative remedies were unexhausted); *Johnson v. Johnson*, 385 F.3d 503, 518 (5th Cir. 2004) (race-based claim unexhausted where prisoner's grievance included only enough facts to put prison officials on notice of claim based on sexual orientation); *Wilson v. Taylor*, 2002 WL 950062, at *2-4 (N.D. Fla. Feb. 28, 2002) (four claims relating to religious practices raised in grievances exhausted, but others also relating to religious practices not raised in grievances unexhausted); *Martinez v. Minnis*, 257 F. App'x 261, 265 n.5 (11th Cir. 2007) (finding prisoner who filed grievance concerning placement in special housing unit failed to exhaust retaliation claim because grievance "did not mention retaliation or use any words synonymous with

or indicating retaliation, nor did it provide the BOP with notice of allegedly retaliatory action or the opportunity to correct it").

Therefore, under step one of the *Turner* analysis, and in light of the lack of a response to the motion from the Plaintiff and any discussion of grievances by the Plaintiff in his complaint, the undersigend finds that Plaintiff has failed to exhaust his administrative remedies as to his claims against the Warden.

Accordingly, it is respectfully recommended that,

1.    Defendant Warden Clemmons' motion to dismiss (ECF Doc. 30) be GRANTED.

2.    Judgment be entered in favor of the Warden and the Warden terminated as a defendant in this action.

3.  This case be remanded to the undersigned for further proceedings.

At Pensacola, Florida, this 4th day of September, 2020.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and**

recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.