UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRIAN MARKEITH GAGE,

    Plaintiff,

v.                                      Case No. 3:19-cv-3650-MCR-HTC

WALTER CLEMMONS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter comes before the Court on Sergeant Stephen's Notice of Adoption (ECF Doc. 35) and joinder in the arguments raised in Defendant Warden Clemmons' Motion to Dismiss (ECF Doc. 30).[1] Upon consideration, the undersigned recommends that the motion to dismiss be GRANTED as to Stephens and Stephens be dismissed as a defendant in this action. Notably, as the undersigned found with regard to the Warden,[2] Plaintiff has failed to exhaust his administrative remedies as to his claims against Stephens.

---

[1] *See also*, Defendants' Notices of Filing, ECF Doc. 37 and 38, correcting exhibits 3 and 4 to the motion to dismiss.
[2] On October 9, 2020, the Court adopted the report and recommendation, granting the Warden's motion to dismiss. ECF Doc. 40, adopting order; ECF Doc. 39, report and recommendation.

## I.     BACKGROUND

Plaintiff Brain Markeith Gage, proceeding *pro se* and *in forma pauperis*, brings this action against Warden Clemmons and Sergeant Stephens arising from an incident that occurred at Santa Rosa Correctional Institution ("SRCI"). In July 2018, Plaintiff was the victim of a sexual assault by another inmate and was placed in administrative confinement pending his request for protective management. Plaintiff alleges that at approximately 2:00 a.m. in the morning on September 14, 2020, Sergeant Stephens placed inmate Trent Payne in his cell despite Plaintiff's protected status and despite knowing that Payne is "a confirmed gang member," who exhibits "sexually predatory behavior." *Id.* After Sergeant Stephens left, Plaintiff alleges he was sexually and physically assaulted by inmate Payne for over seven (7) hours. *Id.* Plaintiff alleges Sergeant Stephens, "purposefully failed to protect" Plaintiff and that he "facilitated this sexual assault." *Id.*

On June 30, 2020, the Warden moved to dismiss Plaintiff's claims against him on several grounds, including, as relevant to this report and recommendation, failure to properly exhaust his administrative remedies.[3]  *Id.*  On September 4, 2020, the

---

[3] The Warden also raised the following arguments: (1) Plaintiff's claims are governed by the Eighteenth, rather than Fourteenth Amendment; (2) Plaintiff's allegations of supervisory liability are conclusory; (3) the Warden is entitled to absolute immunity for claims against him in his official capacity; and (4) the Warden is entitled to qualified immunity. Because the undersigned finds that the claim against Sergeant Stephens is subject to dismissal for failure to exhaust, the undersigned does not address the other arguments. The undersigned notes, however, that the Warden's argument relating to supervisory liability does not apply to Sergeant Stephens.

Case No. 3:19-cv-3650-MCR-HTC

undersigned entered a report and recommendation, recommending that the Warden's motion to dismiss be granted on failure to exhaust grounds. ECF Doc. 39. Plaintiff did not file an objection, and the District Judge adopted the report and recommendation and dismissed the case against the Warden on October 9, 2020. ECF Doc. 40.

On August 28, 2020, Sergeant Stephens filed a Notice of Adoption, joining and adopting the arguments raised in the Warden's motion to dismiss. ECF Doc. 35. That same day, the Court entered an Order directing Plaintiff to show cause why the Court should not grant the motion as to Sergeant Stephens and warning Plaintiff that, if he intended to oppose the motion, he had until September 28, 2020 to file a written response. ECF Doc. 36. Plaintiff has not filed a response and his time for doing so has expired.

## II.    LEGAL STANDARD

The defense of failure to exhaust should be treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss or be treated as such if raised

in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

When deciding a motion to dismiss for failure to exhaust administrative remedies, the Court uses a two-step process. *Turner*, 541 F.3d at 1082. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* It is the defendant's burden to prove "that the Plaintiff has failed to exhaust his available remedies." *Id.*

## III.   DISCUSSION

There is no dispute in this case that Plaintiff filed grievances after the sexual assault occurred. In his motion, the Warden does not argue that Plaintiff failed to complete the administrative procedures, and, although the Warden mentions that the grievances were untimely, he does not argue failure to exhaust on that ground. Instead, the focus of the Warden's argument is that the content of the grievances were insufficient to put the Florida Department of Corrections ("FDOC") on notice

of a claim against the Warden for carrying out a casual policy of improperly housing inmates on disciplinary action with inmates on protective management. The undersigned presumes that Stephens is similarly arguing that the content of the grievances filed by Plaintiff were insufficient to put the FDOC on notice of the failure-to-protect claim Plaintiff has asserted against him. For the reasons discussed below, the undersigned agrees.

> A.   **Requirements Under the Prison Litigation Reform Act (PLRA)**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory pre-requisite to filing suit that federal courts "have no discretion to waive." *Rich*, 530 F.3d at 1373. A court must dismiss an action if it is satisfied that an inmate failed to properly exhaust his available administrative remedies before filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

The process of having a prisoner exhaust his administrative remedies "gives an agency the opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "The benefits of exhaustion can be realized only if the prison grievance

system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id.* at 95.

It is not enough for a plaintiff to simply exhaust his administrative remedies, however, as the PLRA requires proper exhaustion. *Id*. at 94. "Requiring proper exhaustion . . . gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. While the grievance process may "vary from system to system and claim to claim . . . it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

The grievance procedure that must be followed is determined by the agency – here, the FDOC. *See Jones*, 549 U.S. at 218. The FDOC's grievance procedures generally require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).

### B. Plaintiff's Grievances

On September 24, 2018, Plaintiff filed a formal grievance, identified as 1809-119-538, with the Warden about the attack by Payne. ECF Doc. 30-4 at 2. In his

grievance, Plaintiff complained that Payne should never have been his roommate because Plaintiff is transgender, was "listed as an adverse PREA risk," and was pending protective management, while Payne had a disciplinary action pending against him. *Id.* Plaintiff complained the "staff is at fault" but did not mention Sergeant Stephens in this grievance. *Id.*

On October 10, 2018, the Warden returned the grievance without further processing because it had been previously addressed when Plaintiff reported it to Captain Jernigan. ECF Doc. 30-4 at 1.[4] In the response, the Warden noted that Plaintiff was located to another cell and that he was also transferred on September 26, 2018. *Id.* The Warden further advised Plaintiff that future inquiries should be submitted to the institutional inspector by submitting a DC6-236 inmate request. *Id.* The Plaintiff did not appeal this grievance to the Secretary, nor did he submit an inmate request.

Plaintiff filed his second formal grievance, identified as 1810-102-158, on October 8, 2018. ECF Doc. 30-6 at 4. Similar to his first grievance, Plaintiff complained about the September 14, 2018 sexual assault, but added that inmate Payne was a known STG gang member. Additionally, Plaintiff stated that "while

---

[4] The Warden cites Fla. Admin. Code r. 33-103.014(1)(N), but likely meant to cite r. 33-103.014(1)(m) which provides that a grievance may be returned without processing if "[a] decision has already been rendered to an inmate by a particular office on the issue currently being grieved before it."

Case No. 3:19-cv-3650-MCR-HTC

the housing officer (Ofc. Bland) was conducting [the] master roster count," he notified Officer Bland of the prison rape elimination act (PREA). *Id.* Plaintiff makes no mention of Sergeant Stephens. The Warden returned Plaintiff's grievance without further processing on October 24, 2018 because the allegations had already been reported to the Inspector General prior to Plaintiff filing his grievance. ECF 30-5 at 1.

On October 23, 2018, Plaintiff filed a third formal grievance, identified as 1810-102-158, which sought to appeal disciplinary report log #102-182383. ECF 38-1 at 6. The grievance also referenced the sexual assaults which occurred on July 11, 2018 and September 14, 2018 as well as the ongoing investigation by the Inspector General and Plaintiff's pending protective status. *Id.* at 7. Plaintiff again makes no mention of Sergeant Stephens. On October 29, 2018, the Warden denied Plaintiff's grievance because there was no record of Plaintiff having been found guilty of the listed disciplinary report. *Id.*

On November 1, 2018, Plaintiff submitted his fourth formal grievance identified as 1811-102-013 wherein he reiterated the allegations contained in his previous grievances. ECF Doc. 30-3 at 2. Plaintiff added that "the housing supervisor" introduced inmate Payne "as a good guy" and that Payne "don't cause much pain." *Id.* Plaintiff also mentions Sergeant Stephens for the first time. Specifically, Plaintiff states that not long after "Sgt. Stephens leaves" he was

assaulted by inmate Payne. *Id.* Plaintiff does not set forth any additional facts regarding Sergeant Stephens. Instead, Plaintiff again explains how he handed the "housing officer (Ofc. Bland)" a note warning him of PREA. *Id.* The Warden responded to Plaintiff's grievance on November 5, 2018, explaining that the grievance was a duplicate of Plaintiff's previous grievance and directed Plaintiff to contact the inspector general's office for further information. *Id.* at 1.

Finally, on November 6, 2018, Plaintiff filed an administrative appeal regarding the sexual assault to the Secretary. ECF Doc. 30-6 at 2. This time, Plaintiff clarifies that it was Sergeant Stephens who brought Payne to Plaintiff's cell and stated that "Payne . . . don't cause much pain." *Id.* Plaintiff does not state any other facts about Sergeant Stephens. *Id.*

On November 19, 2018, the Warden issued an initial response and approved Plaintiff's appeal "for further inquiry." *Id.* The Warden also advised that Plaintiff could appeal again within fifteen (15) days of the institution's response. *Id.* There is no indication that Plaintiff filed a further appeal after receiving a response from the institution. On December 13, 2018, the Warden issued an amended response denying Plaintiff's appeal "[a]s this process was initiated prior to the receipt of" Plaintiff's appeal." ECF Doc. 38-1 at 1.

### C.     Sufficiency of Plaintiff's Grievances

The level of specificity required for an administrative grievance is determined by the "rules of the particular prison system." *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1243 (N.D. Fla. 2019). "[T]he only requirement established by [the FDOC] is that the inmate shall ensure that the form is legible, that included facts are accurately stated, and that only one issue or complaint is addressed at a time." *Id.* (quoting Fla. Admin. Code R. 33-103.005(2)(b)) (internal quotations omitted). As such, the FDOC's rules "mandate[] no level of detail at all, requiring only that whatever facts are stated must be true." *Goldsmith v. White*, 357 F. Supp. 2d 1336, 1339 (N.D. Fla. 2005).

However, "allowing claims to proceed without any level of detail would thwart the purpose of the PLRA's exhaustion requirement, which is to put administrative authority *on notice of all of the issues* in contention and allow the authority an opportunity to investigate those issues." *Harvard*, 411 F. Supp. 3d at 1244 (emphasis added). Although the PLRA does not require a prisoner "to provide information he cannot reasonably obtain" or "require him to inform those who will pass on his grievance of the identity of the . . . prison commissioner," the Eleventh Circuit has held that the PLRA "requires a prisoner to provide in his administrative grievance as much relevant information about his claims, including the identity of those directly involved . . . as the prisoner reasonably can provide." *Brown v. Sikes*,

212 F.3d 1205, 1210 (11th Cir. 2000).  Requiring an inmate to provide "all relevant information reasonably available to him logically requires that the essence of the claim be clearly stated if the polices underlying the exhaustion requirements are to be given meaningful effect."  *McNeil*, No. 09-22754-CIV, 2012 WL 13195760, at *3.

When determining what amount of information must be included in a prisoner's grievance, federal courts look at "two factors: 1) what information was known or available to the inmate when seeking relief via administrative grievances; and 2) the need to provide notice to prison officials of what the prisoner is complaining of so they may have an opportunity to . . . possibly correct the problem." *Moore v. McNeil*, No. 09-22754-CIV, 2012 WL 13195760, at *2 (S.D. Fla. Aug. 10, 2012), *report and recommendation adopted in part, rejected in part*, No. 09-22754-CIV, 2012 WL 13195763 (S.D. Fla. Sept. 20, 2012).  "[W]hen a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (citation omitted).

In Plaintiff's amended complaint, he alleges that "Sgt. Stephens personally knew of [inmate] Payne's status as a gangster disciple," knew that Plaintiff was "being protected after already being assaulted," "had knowledge of Payne's sexually

predatory behavior," and "purposefully failed to protect" Plaintiff. ECF Doc. 9 at 6. He further alleges that Stephens "facilitated this sexual assault." *Id*.

In Plaintiff's grievances, however, all he says about Stephens is that Stephens put Payne in the cell, told Plaintiff Payne is "a good guy, name[d] Payne but he don't cause much pain," and leaves. ECF Doc. 30-6 at 2; ECF Doc. 30-3 at 2. The allegations in the grievance, while naming Stephens, fails to alert the FDOC to any wrongdoing by Stephens. *See Doe v. Anderson,* No. 15-13852, 2017 WL 4684614, at *4-7 (E.D. Mich. Oct. 18, 2017) (finding failure to exhaust where the grievances failed to concern the specific conduct alleged against the defendant in the complaint). The grievances also fail to alert the FDOC that Stephens had any knowledge Payne should not have been in the cell with Plaintiff, had any knowledge that Payne was a danger to Plaintiff, or that Stephens failed to protect Payne – as alleged in the amended complaint. *Perry v. Kelley*, No. 1:11-CV-1103, 2013 WL 891887, at *6 (W.D. Mich. Feb. 8, 2013), *report and recommendation adopted in part*, No. 1:11-CV-1103, 2013 WL 891528 (W.D. Mich. Mar. 8, 2013) (granting unopposed motion to dismiss as to defendant Spitters and noting that the only grievance naming Spitters was not about his failure to provide a low bunk pass as alleged in the complaint). Indeed, while the grievances contain facts alleging wrongful conduct by Officer Bland, Bland is not a defendant in this action.

To exhaust administrative remedies, a plaintiff must "provide enough information . . . to allow prison officials to take appropriate responsive measures." *Griffin*, 557 F.3d at 1121 (citation omitted). Plaintiff, however, has failed to do that with regard to his claim against Sergeant Stephens. *See McDaniels v. United States*, No. 514CV02594VBFJDE, 2019 WL 8647817, at *6–7 (C.D. Cal. Nov. 19, 2019) (holding that plaintiff failed to exhaust his claim because "nothing in Plaintiff's administrative grievance would have alerted the Prison to the nature of the alleged additional claim that Prieto caused the attacks by disclosing sensitive information to other inmates . . . . Plaintiff merely indicated that he previously spoke to Prieto regarding concerns for his safety at the Prison; he did not provide any information remotely suggesting Prieto caused the attacks.").

The deficiency with Plaintiff's grievances as to his claim against Stephens is similar to the deficiency identified in *Goldsmith v. White*, a case from a court in this District. *Goldsmith*, 357 F. Supp. 2d 1336 (N.D. Fla. 2005). In *Goldsmith*, the plaintiff alleged in his grievance that his contact lenses had been taken. *Id.* at 1337. Nowhere in his grievances did he allege that defendant took the contacts because of plaintiff's sexual orientation. *Id.* Yet, in his complaint, plaintiff alleged that he was allowed to have contact lenses in five prior institutions and that defendant White took them after learning plaintiff was a homosexual. *Id.*

Judge Hinkle found the grievances to be insufficient to have exhausted plaintiff's administrative remedies because plaintiff "failed to include all known facts; failed to even identify the problem (discrimination based on sexual orientation) or to mention the core facts on which his claim was based (that he is homosexual and that Officer White used a bigoted reference to homosexuality when he took the action at issue)." *Id.* at 1340. Specifically, Judge Hinkle noted that "the grievances and appeals made no references to an additional fact on which Mr. Goldsmith now relies: that Officer White said, when he took the contact, that he was doing so 'because I don't like you fagots anyway.'" *Id.*

Like the plaintiff in *Goldsmith*, Plaintiff failed to identify the problem he had with Stephens (that Stephens failed to protect him); failed to include all known facts; and, most importantly, made no reference to the core facts on which Plaintiff now relies upon in his amended complaint – that Stephens knew Payne was a gang member, knew of Payne's sexually predatory behavior, and knew Plaintiff was in protective status and intentionally caused Plaintiff to be assaulted. Plaintiff's failure to include these core facts in his grievances or any facts tending to show any wrongdoing by Stephens constitutes a failure to exhaust even under the lesser standard imposed by the PLRA. Allowing Plaintiff to proceed on his claim against Stephens in this Court when he failed to include such core facts in his grievances would render the exhaustion requirements meaningless. *See Brown v. Sikes*, 212

F.3d 1205 (11th Cir. 2000) (holding that each of the polices favoring exhaustion is furthered by requiring that a prisoner provide with his grievance all relevant information reasonably available to him).

### D. Plaintiff's Failure to Oppose the Motion to Dismiss

Additionally, Plaintiff has not filed a response to the motion even after being directed to do so if he intends to oppose the motion. ECF Doc. 36. Not only did the Court direct Plaintiff to file a response if he opposed the motion but, also, under rule 7.1(H) of this Court's local rules, a "[t]he Court may grant a motion by default if an opposing party does not file a memorandum as required by this rule." N.D. Loc. R. 7.1(H). "The local rule permits the district court to treat the defendants' motion to dismiss as unopposed, and under it the district court would be justified in deciding the motion on the papers before it." *Giummo v. Olsen*, 701 F. App'x 922, 924 (11th Cir. 2017). (citation omitted) (internal quotations omitted).

Also, because Plaintiff has failed to respond to the motion to dismiss, the undersigned finds that dismissal is warranted under the first step of the *Turner* analysis. *See Turner*, 541 F.3d at 1082 ("First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.").

## IV.   CONCLUSION

Accordingly, it is respectfully recommended that

1. The motion to dismiss as, adopted by Defendant Stephens in the notice of adoption (ECF Doc. 35), be GRANTED for failure to exhaust.

2. Judgment be entered in favor of the Sergeant Stephens.

3. Plaintiff's amended complaint be DISMISSED as there are no claims which remain pending against any defendant.

4. The clerk be directed to close the file.

At Pensacola, Florida, this 9th day of October, 2020.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. **Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.** An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.